Gen. 167]                                                                 167

**HEALTH**

**EMERGENCY MEDICAL SERVICES — LIFE-SUSTAINING PROCEDURES — AUTHORITY FOR EMERGENCY MEDICAL SERVICES PALLIATIVE CARE/DO NOT RESUSCITATE PROTOCOL**

January 30, 1995

*Robert R. Bass, MD, FACEP*
*Maryland Institute for Emergency*
 *Medical Services Systems*

You have requested our opinion whether the Maryland Institute for Emergency Medical Services Systems ("MIEMSS") has the authority, in conjunction with the Board of Physician Quality Assurance ("BPQA"), to issue an "Emergency Medical Services Palliative Care/Do Not Resuscitate Protocol" for pre-hospital providers.

For the reasons stated below, we conclude that MIEMSS and the BPQA do have this authority under current law.

**I**

**Proposed MIEMSS Protocol**

MIEMSS, with the BPQA's concurrence, is planning to issue a protocol for pre-hospital providers to describe the circumstances under which emergency medical services ("EMS") personnel are to forgo efforts at cardiopulmonary resuscitation ("CPR") that they would ordinarily make. The new protocol will authorize the use of pain relief and other comfort care measures, instead of CPR, if the patient's attending physician has issued a palliative care/"do not resuscitate" ("DNR") order on a form to be developed and issued by MIEMSS.

Under the proposed protocol, the patient's attending physician would issue the palliative care/DNR order only under circumstances authorized by the Health Care Decisions Act, Title 5, Subtitle 6 of

the Health-General ("HG") Article, Maryland Code. Thus, for example, the physician might enter the order pursuant to the patient's instruction in an advance directive after the appropriate certification of the patient's condition had been made. *See* HG §5-606(b).[1]

The new MIEMSS protocol would establish procedures to be followed by the attending physician in completing the standard form that MIEMSS will distribute; the criteria for EMS personnel in determining when to initiate, withhold, or withdraw CPR; and the types of care to be rendered in lieu of CPR.

## II

### Outpatient "Do Not Resuscitate" Orders Under The Health Care Decisions Act

MIEMSS and the BPQA have explicit statutory authority to adopt a protocol that will require EMS personnel to provide comfort care, instead of CPR, to a patient with an appropriate physician's order. The Health Care Decisions Act includes an instruction to EMS personnel to follow a particular DNR protocol:

> Certified emergency medical services personnel shall be directed by protocol to follow emergency medical services "do not resuscitate orders" pertaining to adult patients in the outpatient setting in accordance with protocols established by the Maryland Institute for Emergency Medical Services Systems in conjunction with the State Board of Physician Quality Assurance. Emergency medical services "do not resuscitate orders" may not authorize the withholding of medical

---

[1] The protocol would likewise reflect both the grants of authority and the limitations elsewhere in the Act. *See* HG §§5-601(n) (limited definition of "medically ineffective treatment"), 5-602(h) (standards for health care agents), 5-605(c) (standards for surrogates), 5-606 (required certifications by physicians), and 5-611 (medically ineffective life-sustaining procedures).

interventions, or therapies deemed necessary to provide comfort care or to alleviate pain.[2]

§5-608(a) of the Health-General ("HG") Article, Maryland Code.[3]

An EMS DNR order is specifically defined in HG §5-601(h):

> "Emergency medical services 'do not resuscitate order'" means a physician's written order in a form established by protocol issued by the Maryland Institute for Emergency Medical Services [Systems] in conjunction with the State Board of Physician Quality Assurance which, in the event of a cardiac or respiratory arrest of a particular patient, authorizes certified emergency medical services personnel to withhold or withdraw cardiopulmonary resuscitation including cardiac compression, endotracheal intubation, other advanced airway management techniques, artificial ventilation, defibrillation, and other related life-sustaining procedures.

This definition limits the scope of an EMS DNR order to "the event of a cardiac or respiratory arrest ...." This term, not itself defined in the act, is to be given its ordinary meaning. *See In re Douglas P.*, 333 Md. 387, 392, 635 A.2d 427 (1994); *Atkinson v. State*, 331 Md. 199, 215, 627 A.2d 1019 (1993).[4] In an earlier

---

[2] EMS personnel who follow a DNR order issued pursuant to this section are immune from liability as a result of their withholding or withdrawing CPR. HG §5-609(a).

[3] EMS personnel are also to follow a DNR order issued by either an on-line EMS medical command and control physician or a physician physically present at the scene. HG §5-608(c)(2)(3). EMS personnel must, in any event, provide CPR to a patient who requests it prior to cardiac or respiratory arrest. HG §5-608(b).

[4] We are aware of nothing in the legislative history that would
(continued...)

opinion, we cited the following definitions: "'Cardiac arrest is the sudden unexpected cessation of heartbeat and blood pressure.... Respiratory arrest is the sudden cessation of effective breathing.'" 79 *Opinions of the Attorney General* 218, 221 (1994) (quoting Office of Technology Assessment, *Life-Sustaining Technologies and the Elderly* 168 (1985)).

As a practical matter, the scope of EMS DNR orders, as thus delimited, might not always fully carry out the wishes of a competent patient or legally authorized decision-maker on behalf of an incapacitated patient. Suppose, for example, that a patient in a terminal condition had executed an advance directive flatly ruling out the use of CPR. Such a directive presumably would reflect the patient's judgment that the suffering associated with even successful CPR was not justified by a sufficient benefit under the circumstances.[5] A physician's order to EMS personnel to implement that advance directive would logically rule out CPR even if the patient were experiencing serious cardiac or respiratory distress short of full arrest.

The Health Care Decisions Act, however, does not address that contingency. If MIEMSS and the BPQA have authority to issue a protocol calling for palliative care, instead of CPR, in circumstances other than cardiac or respiratory arrest, the source of that authority lies elsewhere than in the Act.

## III

### Authority to Issue Palliative Care Protocol

Among other responsibilities, the EMS Board at MIEMSS is to "develop and adopt a Emergency Medical System plan to ensure effective coordination and evaluation of emergency medical services

---

[4] (...continued) cause us to read the term "cardiac or respiratory arrest" in any unconventional way.

[5] CPR involves procedures that are "'highly intrusive, and some are violent in nature. The defibrillator, for example, causes violent (and painful) muscle contractions....'" *In re Riddlemoser*, 317 Md. 496, 501 n.2, 564 A.2d 812 (1989) (quoting *Matter of Dinnerstein*, 380 N.E.2d 134, 136 (Mass. App. 1978)).

delivered in this State." §13-1D-09(a) of the Education ("ED") Article, Maryland Code. The plan is to include "[c]riteria and guidelines for the delivery of emergency medical services including provisions to assure proper medical direction of emergency medical services." ED §13-1D-09(b)(1)(ii).

In accordance with this plan "and other relevant policies adopted by the EMS Board," the Executive Director of MIEMSS is to "[c]oordinate a statewide system of Emergency Medical Services," "[c]oordinate the training of all personnel in the Emergency Medical Services System and develop the necessary standards for their certification," and "[i]mplement all programmatic, operational, and administrative components of the Institute." ED §13-1D-10(1), (4), and (12).

Taken as a whole, these provisions authorize the Executive Director of MIEMSS, working within the framework of the EMS plan, to establish protocols under which EMS personnel are to be trained, certified, and governed in their day-to-day operations. If the Executive Director believes that the policies underlying the Health Care Decisions Act can best be furthered by a protocol that addresses not only DNR orders for patients who suffer cardiac or respiratory arrest but also DNR orders for patients who are not yet clinically in cardiac or respiratory arrest, the Executive Director may develop such a protocol.[6]

Furthermore, the Board of Physician Quality Assurance has statutory authority to participate in the adoption of such a protocol. Under §14-305 of the Health Occupations ("HO") Article, Maryland Code, an emergency medical technician-paramedic may perform without licensure certain activities that fall within the scope of the practice of medicine. Specifically, HO §14-305(d) provides as follows:

> Subject to the rules, regulations, and orders of the Board, an emergency medical technician-paramedic, while delivering emergency health care services or undergoing training, may perform the following services without a license:

---

[6] EMS personnel who follow the palliative care aspects of such a protocol would do so within the immunity granted by §§5-309, 5-309.1, and 5-310 of the Courts and Judicial Proceedings Article, Maryland Code.

(1) All phases of cardiopulmonary resuscitation;

(2) All phases of prehospital advanced life support;

(3) Administering of drugs or intravenous solution as directed by a license physician by radio, telemetry, or written or oral instruction; and

(4) Obtaining blood for laboratory analysis.

*See also* HO §14-303 (b) (cardiac rescue technicians). The "rules, regulations, and orders of the Board" may include the BPQA's concurrence in a palliative care protocol for certain patients receiving the services of these pre-hospital providers.

## IV

### Conclusion

In summary, it is our opinion that MIEMSS and the Board of Physician Quality Assurance have authority to issue a protocol to implement DNR and palliative care orders by physicians.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*